Filed 2/28/14  Kenitzer v. Sierra Joint Community College Dist. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEBORAH KENITZER, | C067738 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV23628) |
| v. | |
| SIERRA JOINT COMMUNITY COLLEGE DISTRICT et al., | |
| Defendants and Respondents. | |

Over the course of four pleadings, plaintiff Deborah Kenitzer attempted to sue her employer, defendant Sierra Joint Community College District (District), and one of its employees for employment retaliation, discrimination, and harassment, and invasion of privacy.  Many of the causes of actions were dismissed on demurrer, and the others were decided against plaintiff on summary judgment.  The trial court also awarded attorney fees to the District.

1

Plaintiff appeals, claiming she pleaded sufficient facts to survive the demurrers and introduced sufficient evidence to survive the motion for summary judgment. She also claims the trial court abused its discretion when it granted the District's attorney fees motion, sustained various evidentiary objections made by the District, and granted the defendant employee's motion to quash a third party deposition subpoena. We disagree with her contentions and affirm the judgment.

FACTS

Because we begin by evaluating the rulings on demurrer, we recite the facts as plaintiff has alleged them. For purposes of appeal from a judgment of dismissal following a demurrer, we assume the truth of all properly pleaded material allegations. (*Foley v. Interactive Data Corp*. (1988) 47 Cal.3d 654, 663.) We will add additional facts when we discuss the propriety of summary judgment.

We begin with the allegations in plaintiff's second amended complaint. Plaintiff began working in the Disabled Student Program and Services office (DSPS) at the District's Nevada County campus in 1998. In 2000, she became a permanent classified DSPS technician.

While working in 2001, plaintiff fell down a flight of cement stairs and sustained serious injuries. She returned to work, but she underwent spinal surgery in April 2003 as a result of her injuries. The spinal injury has caused plaintiff permanent physical disability, restricting her mobility. Following the surgery, she returned to work in August 2003 with work restrictions. The restrictions included limits on lifting.

Plaintiff alleges that in or about November 2003, she became aware that District administrators were purportedly committing fraud against the federal government. They allegedly were seeking reimbursement from federal funds for accommodations provided to disabled students that in fact were not provided. Administrators were altering student contracts and plans without verifying the students' continuing participation in the

2

program or their needs for accommodations. Plaintiff expressed concern to her supervisors about this practice on numerous occasions.

On or about August 31, 2004, plaintiff provided defendant Milton Lucius, one of plaintiff's supervisors at the time and, later, a counselor in the DSPS office, with a list of permanent work restrictions from her physician. Plaintiff asked for, and the District allegedly granted, accommodations for her disability by approving student assistance in the DSPS office to help relieve her mobility workload.

After plaintiff requested accommodations and had openly expressed concerns about the DSPS program, Lucius allegedly began to harass her and to use her disability to cover his own misconduct and discredit her complaints concerning improper activity in the DSPS program. For example, Lucius allegedly complained to the provost that plaintiff was getting things confused because of her medication. When plaintiff confronted him about these statements, he told her, "You have always gotten things messed up" and, "You obviously [have] ADHD or are bi-polar."

On or about September 29, 2005, plaintiff met with a supervisor and told him about her problems with Lucius and the possible fraudulent reporting. On or about November 8, 2005, plaintiff was informed the accommodations she had been receiving due to her back injury were being investigated. Her supervisor and Lucius later refused to hire an assistant as an accommodation. She was also told that her request for a student assistant was unreasonable, and any further efforts to obtain accommodations could threaten her employment.

In spite of this warning, plaintiff sought the help of the program manager of the District's equal employment opportunity (EEO) office to obtain accommodations. She subsequently received approval to hire an assistant for the 2006-2007 academic year.

Meanwhile, in December 2005, plaintiff was instructed in writing to report to the federal government that certain District students were receiving accommodations, but plaintiff alleges those students did not have sufficient contact with the DSPS program for

3

the school to receive federal funding for them. Plaintiff raised this point with her supervisors, but she was ordered to do what she was told because she was "only a tech."

In or about May 2006, plaintiff was directed to "complete scans for disabled students that [allegedly] did not qualify for accommodations." Recognizing these scans would be used to calculate federal funding, plaintiff refused to comply with the directive. She reported her concerns to Lucius and his supervisor. In July 2006, she expressed her concern to Lucius and his supervisors that she was being asked to provide accommodations for students who had not completed the paperwork to receive accommodations and who had no idea they were receiving accommodations. Nothing was done to remedy these purported activities.

Plaintiff's superiors continued to harass her through 2006. In January of that year, Lucius blamed plaintiff for his failure to prepare certain required forms, alleging she had failed to inform him of the directive to do so. In October 2006, Neal Allbee, then the Executive Dean of the Nevada County campus, questioned plaintiff's ability to perform her job due to an apparent misuse of police services that plaintiff alleges did not originate with her. In November 2006, Lucius accused plaintiff of violating chain of command by failing to refer a student complaint to him, even though he allegedly already knew of the complaint and the complainant had requested not to speak with him.

In or about February 2007, plaintiff made an informal complaint to the District's EEO office. In the following months, the EEO program manager attempted to reach a compromise with Lucius regarding the improper directives given to plaintiff, but allegedly the harassment and retaliation continued.

On June 30, 2007, Lucius and Dean Allbee again refused to hire a student assistant as an accommodation for plaintiff. Plaintiff explained the physical requirements of her job were too great given her disability, and she provided them a copy of the provost's 2004 written approval of a student assistant as an accommodation for her. Lucius and Dean Allbee refused to reconsider their decision, and allegedly thereafter "made a point

4

to bury her with unmanageable deadlines." Plaintiff alleged the denial of accommodations and the change in workload was in retaliation for contacting the EEO office.

In October 2007, plaintiff notified Lucius and Dean Allbee she needed help because her workload was too great. Lucius responded by e-mail on October 15, accusing her of complaining too much about her workload. She again contacted the EEO office and complained of the harassment and the fraudulent activity.

On or about December 20, 2007, the District changed plaintiff's job description. Instead of the description saying "can perform duties with or without accommodations," the new description allegedly read, "must be able to perform the main physical duties of the job."

On or about January 17, 2008, Lucius verbally ordered plaintiff to provide disability services in a manner that allegedly violated DSPS policies. Plaintiff informed Dean Allbee of Lucius's order. Dean Allbee knew plaintiff had earlier been ordered by a District vice president not to follow verbal orders or else risk her employment. But on January 22, 2008, Dean Allbee ordered plaintiff to comply with Lucius's verbal orders.

On February 23, 2008, plaintiff filed an administrative complaint with the District through the District's internal grievance procedures, alleging harassment, retaliation, fraud, and the wrongful removal of her accommodations. She alleged the District completed its internal investigation on October 30, 2008, but she does not state in the complaint the investigation's conclusion.

On or about March 10, 2008, plaintiff accepted a temporary position in a different campus office. The harassment, however, allegedly continued. Lucius boxed up plaintiff's personal items left behind in the DSPS office, even though her transfer was to last only three or four weeks. The EEO program manager, upon hearing of Lucius's actions, allegedly informed Dean Allbee that Lucius's behavior was retaliatory and unacceptable.

5

In addition, Mandy Davies, a District vice president, sent an e-mail to all DSPS staff allegedly informing them that plaintiff was the whistleblower. She explained that plaintiff's actions were the only real concern. Plaintiff asserted this e-mail was another act of retaliation.

In or about August 2008, plaintiff's personal items were again taken from the DSPS office, and this time, except for some medication, they were thrown in the waste basket. Dean Allbee confiscated the medication and performed a computer search to determine if the medication was appropriate for plaintiff's condition. After learning it was, he returned the medication to plaintiff.

Plaintiff remained working in the other office in what was originally intended to be a temporary position. She alleged the position was one rank lower in classification from her DSPS position, and it had a salary cap of one dollar less per hour. The District also continued to deny any duty to provide her with accommodations for her disability.

PROCEDURAL HISTORY

Prior to completion of the internal investigation, plaintiff filed a complaint with the Department of Fair Employment and Housing (DFEH) on June 24, 2008, and received a right-to-sue letter. She filed her original complaint on September 22, 2008, and thereafter filed a first amended complaint. The trial court sustained the District's demurrer to the first amended complaint in part, with leave to amend.

On February 18, 2009, plaintiff for the first time presented a damages claim to the District pursuant to the Government Claims Act (Gov. Code, § 810 et seq.). After she filed an amended damages claim, the District returned the claim with no action taken as to any claims that accrued prior to August 18, 2008 (six months before she filed her first tort claim), and rejecting any claims that accrued on or after August 18, 2008.

Plaintiff filed a second amended complaint in 2009, the factual allegations of which we have just summarized. She alleged seven causes of action, all against the District and two against Lucius:

6

(1)  Retaliation for whistleblowing (Lab. Code, § 1102.5, subd. (b));

(2)  Retaliation for refusing to engage in illegal conduct (Lab. Code, § 1102.5, subd. (c));

(3)  Discrimination based on disability (the Cal. Fair Employment & Housing Act, Gov. Code, § 12900 et seq. (FEHA));

(4)  Harassment based on disability (FEHA) (against the District & Lucius);

(5)  Retaliation for alleging discrimination or harassment (FEHA) (against the District & Lucius);

(6)  Failure to prevent discrimination, harassment, and retaliation (FEHA): and

(7)  Invasion of privacy (Cal. Const., art. I, § 1).

The District filed a demurrer to the second amended complaint.  The trial court sustained the demurrer without leave to amend as to the first and second causes of action under Labor Code section 1102.5 because plaintiff failed to file a damages claim within the time required by the Government Claims Act.  It sustained the demurrer without leave to amend as to the third cause of action, disability discrimination under FEHA, because plaintiff failed to satisfy the FEHA statute of limitations and failed to allege an adverse employment action, an element of a FEHA discrimination cause of action.  The court sustained the demurrer without leave to amend as to the fifth cause of action against Lucius, retaliation for complaining of discrimination under FEHA, because plaintiff introduced no authority for holding an individual personally liable for retaliation under FEHA.

The trial court sustained the demurrer with leave to amend as to the fifth cause of action against the District and the seventh cause of action, invasion of privacy.  The court overruled the demurrer as to the fourth cause of action, harassment under FEHA against the District and Lucius, and the sixth cause of action, failing to prevent discrimination under FEHA.

7

The court also struck allegations from the second amended complaint pursuant to a motion by the District for sanctions under Code of Civil Procedure section 128.7 for factual misrepresentations. In her fifth cause of action alleging retaliation under FEHA, plaintiff stated "[a]s a result" of filing her administrative complaint with the District on February 23, 2008, she was "removed" from her job at DSPS and placed in a lower position with lower salary for what was supposed to have been a temporary placement. The trial court found the evidence submitted by the District with its motion conclusively established that plaintiff applied for and initiated the job transfer and was not "removed," that she applied for the new job two days after she submitted her administrative complaint, and that her salary was in fact not lowered. The court struck the contested allegations from her pleadings with directions not to allege them again.

Plaintiff thereafter filed a third amended complaint, again pleading her fourth cause of action alleging harassment under FEHA as against the District and Lucius, the fifth cause of action alleging retaliation under FEHA against the District, the sixth cause of action alleging a failure to prevent discrimination under FEHA, and the seventh cause of action alleging invasion of privacy. In addition to the allegations detailed above, plaintiff alleged the retaliation was ongoing because she was still working in what was intended to be a temporary position. She also alleged that in February 2009, the same month she filed her damages claim with the District, she learned by accessing her online job description that she had been terminated from her higher ranking and permanent position in the DSPS office. She also alleged that in March 2008, she had "applied" for a temporary position, rather than saying she "accepted" a temporary position or was "removed" from her permanent position.

The District again filed a demurrer. The trial court sustained the demurrer without leave to amend as to the fifth cause of action against the District alleging retaliation under FEHA. The court took judicial notice of certain evidence it found demonstrated the District had taken no adverse employment action against plaintiff, contrary to her

8

allegations. The court overruled the demurrer as to the fourth, sixth, and seventh causes of action.

During discovery, plaintiff subpoenaed documents from the Board of Behavioral Sciences regarding the status of Lucius's license as a counselor. Lucius filed a motion to quash the subpoena, claiming the requested information was private, not relevant, and not likely to lead to the discovery of admissible evidence. He also requested the trial court conduct an in camera review. The trial court granted the motion to quash without conducting an in camera review, and it awarded Lucius $2,000 in sanctions.

Following discovery, the District moved for summary judgment on the three remaining causes of action. On November 5, 2010, the trial court granted the motion in its entirety. The court granted judgment on plaintiff's fourth cause of action for disability harassment under FEHA and the sixth cause of action for failure to prevent disability harassment under FEHA because plaintiff failed to introduce triable issues of fact showing the alleged harassment was based on plaintiff's disability or that the harassment was severe or pervasive. The court granted judgment on plaintiff's seventh cause of action for invasion of privacy because plaintiff failed to file a timely damages claim with the District and because she had no reasonable expectation of privacy in the medication she had left in her former office for more than five months.

Thereafter, the District filed a motion for attorney fees under FEHA (Gov. Code, § 12965), claiming plaintiff's lawsuit was frivolous. The trial court granted the motion and awarded the District $206,368.50 in attorney fees.

In her appeal, plaintiff contends she pleaded sufficient facts to survive the demurrers, and she introduced sufficient facts to survive the motion for summary judgment. She also claims the trial court abused its discretion when it granted the District's attorney fees motion, sustained various evidentiary objections made by the District, and granted Lucius's motion to quash her deposition subpoena.

DISCUSSION

I

*The Demurrers*

The District contends that at this point, plaintiff is barred by collateral estoppel from seeking to recover on the causes of action the trial court dismissed on demurrer. A subsequent action plaintiff filed against other District employees raised the same issues plaintiff raises here, and that suit, decided against plaintiff, is now final and precludes her litigating the issues in this matter. We agree.[1]

A.  *Additional background information*

On January 25, 2010, the day the trial court sustained in part the District's demurrer to plaintiff's third amended complaint, plaintiff filed a separate complaint (Placer County Super. Ct. No. SCV26454, the second action) against two other District employees: Denise Stone, the District's faculty coordinator for the DSPS program, and Kaylene Hallberg, the District's Dean of Students. In an amended complaint in that action, she named the District as a third defendant. Plaintiff sought damages for whistleblower retaliation under Government Code section 8547.8. That statute authorizes a state employee to file a civil action for whistleblower retaliation after filing a complaint with the State Personnel Board and after the State Personnel Board has issued, or failed to issue, findings on that complaint. (Gov. Code, § 8547.8, subd. (c).) That complaint must be filed with the State Personnel Board within 12 months of the most recent act of retaliation. (Gov. Code, § 8547.8, subd. (a).)

Much of the facts plaintiff alleged in the second action were facts she had alleged in one of the four complaints in this action. She alleged she became aware in or around November 2003 that DSPS officials were engaging in fraudulent actions. Stone at one

---

[1]     The District's request for judicial notice is granted. (Evid. Code, § 452, subd. (d).)

10

point in 2003 had instructed her to change students' reporting information without verification of the students' status. Sometime in 2005, Stone again asked plaintiff to engage in allegedly improper reporting of students' status. When plaintiff expressed her concern, Stone admonished plaintiff for questioning her because plaintiff "was only a tech."

Plaintiff alleged that later that semester, plaintiff expressed her concerns to Dean Allbee, explaining that both Stone and Dean Hallberg were manipulating student records. After that meeting, plaintiff allegedly became the victim of ongoing retaliatory conduct by Stone and Hallberg. Part of that retaliation included attempts to rescind her disability accommodations.

Plaintiff alleged that in February 2008, after becoming unable to tolerate the alleged retaliation, she filed an administrative complaint with the District alleging retaliation for reporting illegal conduct. At the same time, she requested a temporary transfer of six to eight weeks to a lower level position while the investigation was pending.

Plaintiff alleged that even after the transfer, the retaliation and harassment continued. At Stone and Dean Hallberg's direction, plaintiff's personal items and work product were taken from the DSPS office she had temporarily vacated and were thrown away. Hearing about this, plaintiff went to the office to recover the items. She was chastised for going through the trash to retrieve her items and was told to stay away from the office.

Plaintiff alleged that at the same time, and at Dean Hallberg's direction, Dean Allbee confiscated plaintiff's medication. He researched to determine if the medication was appropriate for plaintiff's condition. On or about August 18, 2008, he returned the medication to plaintiff, but only after she signed a release documenting each medication that was confiscated.

11

Plaintiff alleged that on or about October 30, 2008, the internal investigation on her administrative complaint concluded and found no wrongdoing by District personnel with student reporting or with their treatment of plaintiff. At that point, plaintiff believed that any possibility of remedying the situation through the District's internal processes was futile.

Plaintiff alleged that on or about February 18, 2009, she went online to check her employment status. She learned from the information she saw that she had been terminated from her DSPS position. She came to believe the District was not only forcing her to resign from her previous position, but it was also affirmatively terminating her employment.

Plaintiff alleged that her attorney informed the District's counsel that plaintiff had learned she had been terminated. The District by letter stated she had not, in fact, been terminated. She could go back to her position in the DSPS office, or she could remain in her lower ranking position. Plaintiff informed the District that due to past events, she could not go back to the same harassing and hostile environment. She also stated that remaining in her current position would force her to accept a permanent demotion, and she asked if there were any other available positions comparable to her position at DSPS. She never received a response to her request.

Plaintiff alleged she had filed a complaint with the State Personnel Board on or about August 17, 2009, allegedly within 12 months of the last retaliatory action taken against her. For a point of reference, we note the trial court sustained the District's demurrer to plaintiff's second amended complaint in the first action on July 20, 2009, and plaintiff signed her third amended complaint in the first action on August 4, 2009.

The State Personnel Board dismissed her complaint on February 10, 2010, after which she filed the second action.

The District filed a demurrer to the second action. It contended dismissal was appropriate because Government Code section 8547.8 did not apply to community

12

college districts or its employees, plaintiff had not timely filed a damages claim under the Government Claims Act, and plaintiff had failed to plead sufficient facts establishing she suffered an adverse employment action.

The trial court sustained the demurrer without leave to amend. The court issued its order on November 15, 2010, 10 days after it granted the District summary judgment on the remaining claims in plaintiff's third amended complaint in the first action, and five days after notice of entry of that order was issued. First, it determined Government Code section 8547.8 applied only to state employees, not to community college district employees. Those employees could recover for whistleblower retaliation under Education Code section 87164.

Second, plaintiff's claim was subject to the Government Claims Act's damages claim filing requirement. Although Government Code section 8547.8 requires a plaintiff to file a complaint with the State Personnel Board first, Education Code section 87164 does not. The court had already ruled in the first action that plaintiff had failed to timely file a damages claim for her retaliation claims, and plaintiff was now bound by that ruling under res judicata.

Third, even if plaintiff had filed a timely damages claim, she failed to allege an adverse employment action, as also previously ruled by the trial court in the first action.

The trial court awarded sanctions under Code of Civil Procedure section 128.7 as against plaintiff's attorney, ruling no reasonable attorney would have believed the claim raised in the second action was warranted. It ordered plaintiff's attorney to pay sanctions of $6,842.50.

Plaintiff appealed, but she later dismissed the appeal. We issued the remittitur on August 9, 2011, and the trial court's judgment of dismissal in the second action became final.

13

B.      *Analysis*

The District contends the trial court's judgment in the second action collaterally estops plaintiff from pursuing in this appeal all of the causes of action dismissed on demurrer in the first action:  her claims for retaliation under Labor Code section 1102.5 and FEHA and the disability discrimination claim under FEHA.  The District argues the Labor Code actions required plaintiff to file a timely damages claim, and the trial court on identical facts in the second action concluded plaintiff had failed to do so as a matter of law.  It argues that decision is binding here.

The District also contends all of the causes of action dismissed on demurrer required plaintiff to show she had suffered an adverse employment action.  It argues the trial court on identical facts in the second action concluded plaintiff had not done so, and that this decision is also binding here.  We agree with the District.

" 'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [(*Lucido*)].)  The doctrine applies 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]  The party asserting collateral estoppel bears the burden of establishing these requirements.' (*Id*. at p. 341.)  'Even assuming all the threshold requirements are satisfied, however, our analysis is not at an end.  We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting.' (*Id*. at p. 342-343.)" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943-944.)

14

The District has established each of these requirements.  First, the issues sought to be precluded from relitigation are identical to those decided in the second action.  This requirement "addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.  [Citation.]" (*Lucido, supra*, 51 Cal.3d at p. 342.)  The District seeks to preclude relitigation on whether plaintiff timely filed a damages claim for her retaliation causes of action that require a damages claim, and whether plaintiff suffered an adverse employment action, an element of each of her retaliation causes of action.  These issues were decided against plaintiff in the second action.

Second, these issues were actually litigated in the second action.  "An issue is actually litigated '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined . . . .*'  [Citation.]" (*People v. Sims* (1982) 32 Cal.3d 468, 484, original italics.)  The District raised these issues in its demurrer to the second action, plaintiff vigorously opposed them, and the trial court actually determined them.

Third, the issues were necessarily decided in the second action.  This requirement means the issue was not " 'entirely unnecessary' " to the trial court's judgment in the earlier proceeding.  (*Lucido, supra*, 51 Cal.3d at p. 342.)  Even though the trial court's ruling in the second action that plaintiff could not plead a cause of action under Government Code section 8547.8 could have ended the matter, it would have left plaintiff free to amend.  The court, however, went on to address whether plaintiff had filed a damages claim and had suffered an adverse employment action so it could sustain the demurrer without leave to amend.  Even if plaintiff amended her complaint to bring an action under Education Code section 87164, she still could not recover as a matter of law because she could not plead around the lack of a timely damages claim and an adverse employment action.  The court's addressing these issues was not unnecessary.

15

Fourth, the decision in the second action is final and on the merits. Judgment in the second action is final, as plaintiff withdrew her appeal and we issued the remittitur. It is also on the merits, as it established an absolute defense to plaintiff's retaliation causes of action. It concluded plaintiff was barred by res judicata from alleging she timely filed a damages claim or suffered an adverse employment action.

Fifth, there is the required privity, as plaintiff is a party to both actions.

Plaintiff asserts collateral estoppel does not apply here because the trial court's determination in the second action was in error, and because it is "nonsensical" for res judicata to be the basis for dismissing both the first and second actions. Indeed, if given the opportunity, we would question the trial court's use of res judicata to dismiss the second action, as the first action on which the court relied was not yet final, and the issues it would preclude were still subject to this very appeal. Nevertheless, plaintiff's opportunity to raise those arguments was in an appeal from the second action, and she chose to dismiss that appeal. " 'The judgment is on the merits if the substance of the claim is tried and determined, no matter how wrongly it is decided. In other words a judgment is binding and conclusive against collateral attack though it is harsh and unjust, contrary to the evidence, or based upon errors of law. [Citations.]' " (*Beverly Hills Nat. Bank v Glynn* (1971) 16 Cal.App.3d 274, 286.)

Because plaintiff chose not to challenge the judgment in the second action, that judgment is now final, and it collaterally estops her from pleading necessary elements of her causes of action for retaliation and disability discrimination in this action. For that reason, we affirm the judgments against plaintiff's first, second, third, and fifth causes of action.

II

*Summary Judgment on Disability Harassment Cause of Action*

The trial court granted summary judgment in favor of the District on plaintiff's fourth cause of action, disability harassment under FEHA. It determined plaintiff failed

16

to present evidence showing she had been subject to harassment based on her disability, or that, if she had, any harassment had been severe or pervasive.

Plaintiff contends the trial court erred. She argues she submitted sufficient evidence to create triable issues of material fact on each of the required elements of a FEHA disability harassment cause of action. She also claims she can recover on all of the alleged acts of harassment no matter their distance in time under the continuing violation doctrine announced in *Richards v. CH2M Hill, Inc*. (2001) 26 Cal.4th 798.

We agree with the trial court. Plaintiff failed to establish disputed issues of material fact on whether the acts of alleged harassment occurred on account of her disability. Her failure to show such acts occurred within the limitations period bars operation of the continuing violation doctrine and recovery on any of the acts that occurred outside the limitations period.

FEHA makes it unlawful in general "[f]or an employer . . . or any other person, because of . . . physical disability, mental disability, [or] medical condition, . . . to harass an employee . . . ." (Gov. Code, § 12940, subd. (j)(1).) "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, original italics (*Roby*).)

To establish a prima facie case of harassment based on disability, plaintiff must introduce evidence showing: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment complained of was based on her disability; (4) the harassment complained of was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior for the claim against the District. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608 (*Fisher*); see *Muller v. Automobile Club of So.*

17

*Cal.* (1998) 61 Cal.App.4th 431, 446, disapproved on another point in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6; .)

The District claims plaintiff is barred from recovering on many of the alleged acts of harassment under the applicable statute of limitations. Of those acts not time-barred, some, the District contends, did not occur as a matter of fact, and none demonstrate harassment on account of plaintiff's disability. We address each point.

A.  *Statute of limitations*

Before pursuing a private civil action under FEHA, a plaintiff must file a timely administrative complaint with the DFEH. The complaint must be filed within one year of the date of the unlawful employment practice. (Gov. Code, § 12960, subd. (d).) Plaintiff filed her DFEH complaint on June 24, 2008, but she was pursuing the internal grievance procedure at that time. The limitations period for filing a DFEH complaint is tolled if an employee voluntarily chooses to pursue an internal remedy. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 101.) Thus, the administrative complaint was valid only for unlawful employment practices that occurred on or after February 23, 2007; one year before the DFEH complaint was filed plus the time from February 23, 2008, through June 24, 2008, while she pursued the internal grievance process.

Although the limitations period began to run on February 23, 2007, it may accommodate conduct that occurred prior to that date. Generally, an employment discrimination action accrues and the statue of limitations begins to run on the date the last alleged unlawful action occurs. (Gov. Code, § 12960, subd. (d); see *Trovato v. Beckman Coulter, Inc*. (2011) 192 Cal.App.4th 319, 321 (*Trovato*).) However, in *Richards v. CH2M Hill, Inc., supra,* 26 Cal.4th 798, the Supreme Court announced the continuing violation doctrine, which holds an employer liable for a related course of discriminatory, retaliatory, or harassing conduct that occurred outside the limitations period so long as the most recent violations occurred within the limitations period. It also

holds that the limitations period does not begin to run until the employer's actions have acquired a degree of permanence.

The continuing violation doctrine applies even if none of the employer's actions individually is actionable. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1055-1056.) However, a series of events, "each bearing little relationship to the others," does not constitute a continuous course of conduct. (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 390.) Moreover, if the cause of action has accrued, and none of the employer's acts occurred within the limitations period, the continuing violation doctrine will not apply, and it will not save a complaint against a statute of limitations defense. (*Trovato, supra,* 192 Cal.App.4th at p. 326.)

Thus, we must determine whether plaintiff introduced sufficient facts showing the alleged acts of harassment that occurred within the limitations period constituted harassment based on disability. If she did, we must determine whether the acts of harassment were sufficiently severe or pervasive so as to alter the terms and conditions of her employment. If we find in plaintiff's favor on that point as well, we will determine whether the acts done within the limitations period are sufficiently related to those that occurred before the limitations period began so as to justify holding the District liable for those acts as well.

B.       *Harassment based on disability*

"[H]arassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." (*Roby, supra,* 47 Cal.4th at p. 707.) " '[H]arassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' " (*Reno v. Baird* (1998) 18 Cal.4th 640, 645, quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 63.)

19

FEHA regulations define harassment as including "(A) Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act [e.g., disability]; [¶] (B) Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act; [or] [¶] (C) Visual forms of harassment, e.g., derogatory posters, cartoons, or drawings on a basis enumerated in the Act . . . ." (Cal. Code Regs., tit. 2, § 11019, subd. (b)(1).)

Also, "in some cases the hostile message that constitutes the harassment is conveyed through official employment actions, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim. Moreover, in analyzing the sufficiency of evidence in support of a harassment claim, there is no basis for excluding evidence of biased personnel management actions so long as that evidence is relevant to prove the communication of a hostile message." (*Roby, supra*, 47 Cal.4th at p. 708.)

The parties have introduced no reported cases, and we have found none, that describe the showing plaintiff must make to establish the harassment was based on her disability. In the sexual harassment arena, a plaintiff seeking to recover for hostile environment sexual harassment under FEHA must show the harassment was based on sex. (*Fisher, supra*, 214 Cal.App.3d at p. 608.) Under federal sexual harassment law, "there is no legal requirement that hostile acts be overtly sex- or gender-specific in content, whether marked by language, by sex or gender stereotypes, or by sexual overtures. While sex- or gender-specific content is one way to establish discriminatory harassment, it is not the only way: 'direct comparative evidence about how the alleged harasser treated members of both sexes' is always an available evidentiary route. [Citation.] The ultimate question in either event is whether ' "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the

20

other sex are not exposed." ' [Citations.]" (*E.E.O.C. v. National Educ. Ass'n.*, *Alaska* (9th Cir. 2005) 422 F.3d 840, 844.)

Adopting these rules into the realm of disability harassment, we conclude a plaintiff may seek to establish she was harassed on account of her disability by introducing evidence of harassment overtly made on account of her disability, or by showing comparative evidence of how the alleged harassers treated both disabled and nondisabled employees.

We apply these rules to the acts plaintiff claims constituted harassment based on disability that occurred after February 23, 2007. Guided as we are on summary judgment by the allegations in the complaint and the facts alleged in the parties' separate statements supporting the ultimate issues raised in the complaint (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 382), we find plaintiff alleged the following incidents that occurred after February 23, 2007:[2]

1. June 30, 2007: Plaintiff was denied approval to hire a student assistant as a disability accommodation for the 2007-2008 academic year. Lucius assigned plaintiff's former student assistant, Eric Bleasedale, to work for him and no longer for plaintiff. Plaintiff made continued requests in the summer and fall for an assistant, but Dean Hallberg did not respond. Instead she assigned Bleasedale to another department and never hired another assistant that was interviewed for that position.

---

[2] In its briefing, the District contends plaintiff alleged only nine incidents in her complaints that occurred after the limitations period began, and it attacks primarily those nine incidents. Before the trial court, the District did not respond on the merits to plaintiff's separate statement of additional facts, in which she alleged additional acts of harassment within the limitations period. Rather, it opposed it apparently because the statement included facts which the District had raised in its separate statement. However, the District has touched on some of the additional allegations in its briefing here.

2.  October 2007:  Lucius shared with plaintiff his e-mail correspondence with Dean Hallberg regarding hiring a student assistant.  Plaintiff claims Lucius mocked her in the e-mail and was dismissive about her need for an assistant.

3.  Fall 2007:  Lucius and Dean Allbee "loaded [plaintiff] down with unmanageable deadlines."

4.  Fall 2007 or January or February 2008:  While plaintiff did not have an assistant, Lucius refused to assist her when her job required her to lift heavy items.

5.  Fall 2007:  On one occasion, Lucius, on seeing plaintiff come to work using a cane, asked, "What's with the cane?"

6.  October 2007:  Lucius, responding to an e-mail from plaintiff claiming her workload was too great, accused plaintiff of complaining too much about her workload and wrote that her complaints were making him physically ill.

7.  Late 2007:  Lucius reported plaintiff to Dean Allbee for diagnosing a student on an intake form when plaintiff allegedly wrote only what the student had told her.  Dean Allbee threatened to discipline her for the act without going through proper channels.

8.  December 20, 2007:  The District changed plaintiff's job description from "can perform duties with or without accommodations" to "must be able to perform the main physical duties of the job."

9.  January 17, 2008:  Lucius verbally ordered plaintiff to provide disability services to students against District policies and procedures and knowing she had been ordered not to follow verbal orders.  On January 22, 2008, Dean Allbee, with the same knowledge, ordered her to comply with Lucius's verbal order.

10.  Early 2008:  Lucius refused to acknowledge an e-mail from plaintiff asking for clarification, saying, "[D]on't you get enough clarification."

11.  Spring 2008:  Sometime after plaintiff transferred to another office temporarily, Lucius boxed up her personal items she had left behind.

22

12. Spring 2008: Vice President Davies sent an e-mail to all DSPS staff following an internal audit of the DSPS office that identified plaintiff as the whistleblower and stated the only real concern was with plaintiff's actions.

13. Spring 2008: Dean Allbee directed a District police officer to confirm plaintiff's car displayed a disabled parking placard in its windshield.

14. August 2008: Plaintiff's personal items kept in the DSPS office were thrown away. Plaintiff was reprimanded for looking in the dumpster for her items and was told to stay away from the DSPS office until further notice.

15. August 2008: As part of throwing away her items, Dean Allbee confiscated plaintiff's medication and refused to return it until after he had determined it was appropriate medication for her condition.

16. April 2009: Plaintiff learned from a District online job description that she had been "terminated" from her position in the DSPS office effective February 28, 2009, even though her transfer out of that office was temporary.

The District contends plaintiff introduced no substantial evidence showing any of these incidents were acts of harassment based on her disability. We agree.

None of the incidents qualify as harassment based on disability. Plaintiff, in fact, admitted she had *no* evidence that indicated the following incidents occurred due to her disability, other than her sole personal belief:

#3. *Unmanageable workloads*.

#6. *E-mail that plaintiff's complaints made Lucius ill*.

#9. *Verbal orders against District policy*.

#11. *Boxing up of plaintiff's personal items*.

#12. *E-mail from Vice President Davies*.

#14. *Throwing away plaintiff's personal items*.

#15. *Confiscation of plaintiff's medication*.

23

Plaintiff's personal belief that an act was done on account of her disability, without some other evidence to support her belief, is insufficient to establish these incidents occurred due to her disability. There must be a causal connection showing the harassment was made on account of plaintiff's disability. (Cal. Code Regs., tit. 2, § 11019(b)(1).) Plaintiff's personal belief is merely speculation and does not provide the required showing.

We turn our attention to explaining how the evidence does not show the remaining alleged incidents were acts of disability harassment.

#1 and #2. *Denial of student assistant and e-mails regarding the denial.* There is no evidence these incidents occurred due to plaintiff's disability. Plaintiff claims the denial of a student assistant in June 2007 left her without the assistance she needed to reasonably perform her job duties. The uncontested evidence, however, indicates the student assistant was never provided to her as a disability accommodation. The e-mails plaintiff challenges demonstrate she herself did not consider the assistant was needed to accommodate her disability. And plaintiff introduced no evidence showing the District denied the assistant because of her disability.

The uncontested evidence indicates that at a meeting on January 12, 2006, called to address plaintiff's request for accommodations in 2005, plaintiff agreed she did not need a student assistant as a disability accommodation. She stated she agreed to this point because Dean Hallberg told her a student assistant would be provided to her but not as a disability accommodation. In her deposition, plaintiff was asked if she had agreed at this meeting that she did not need a student assistant as an accommodation. Plaintiff responded, "Yes. Based on what [Dean] Hallberg had stated that I will have one anyway."

At a followup meeting on January 25, 2006, plaintiff agreed to two disability accommodations: "fix the canvas cover on the cart so it was easier to manipulate and to have a pull cart." The District again informed plaintiff that while a student assistant

24

would be provided, it would not be provided as an accommodation. Plaintiff stated in her deposition she agreed to these two accommodations on the understanding she would have a student assistant "anyway." Plaintiff's physician later approved the two accommodations, stating that with these accommodations, "it is within reasonable medical probability that [plaintiff] would be able to perform the duties" of her job in DSPS.

In May 2006, plaintiff signed a vocational rehabilitation plan that contained restrictions on her work as directed by her physician and listed the two accommodations to which the District and plaintiff had agreed. From that point in time, plaintiff never requested a student assistant *as a disability accommodation*, although she did request a student assistant in 2007. She stated she did not have to call the request an accommodation to receive a student assistant. All she had to do was request one.

However, on June 30, 2007, plaintiff allegedly was denied approval to hire an assistant for the 2007-2008 academic year. The District's EEO program manager obtained approval for her to hire an assistant, but as the school year began, she had not received formal approval to hire one. Her requests to Dean Hallberg went unanswered. In October 2007, Lucius forwarded to her e-mails between himself and Hallberg regarding plaintiff's request. Plaintiff asserts Lucius mocked her in the e-mail.

The e-mails simply discuss plaintiff's request for a student assistant. There is no mocking of plaintiff, and, more importantly, they make clear the assistant was not requested as a disability accommodation. In her e-mail of October 1, 2007, Dean Hallberg asked Lucius to meet with plaintiff and determine how many hours of help she needs. Hallberg wrote: "I am certainly not opposed to student help if there is a need for *the program*." (Italics added.)

Lucius responded on October 3, 2007, to Dean Hallberg after meeting with plaintiff, and he communicated plaintiff's responses. Plaintiff estimated she would need up to 20 hours per week "for office assistance." Plaintiff said an increased workload and

25

a limit on her hours were slowing down completion of daily tasks and projects. Plaintiff stated she would be less likely to need an office assistant if she was allowed to work full time. Plaintiff stated she was also hindered in fulfilling her work by responsibilities that required her to remain in the office.

These e-mails demonstrate the student assistant, from plaintiff's perspective, was not sought as a disability accommodation. She needed an assistant because she was not allocated enough working hours in the day to finish her work. Otherwise, she would not have needed one.

No matter what her reason for requesting an assistant, there is no evidence that any denial of an assistant was based on her disability. The only evidence that a student assistant was denied in June 2007 on account of plaintiff's disability is plaintiff's belief. Neither e-mail from Dean Hallberg or Lucius indicated any intent on their part to mock plaintiff or deny her request on account of her disability.

#4. *Refusing to render her assistance*. The facts of this incident do not indicate Lucius refused to render plaintiff assistance on account of her disability. Plaintiff asked Lucius to help move a desk and table to prepare a room for testing. Lucius said no. She told him she was not supposed to be doing this, and that she had been told that if she did not have a student assistant, she could ask him for help. Lucius replied, "No, you don't need any help."

Plaintiff's evidence does not indicate this incident occurred on account of her disability. The record indicates there was an ongoing dispute between plaintiff and her supervisors regarding how much help plaintiff actually needed to perform her job. The student assistant was provided for program needs, not for any disability. Lucius's refusal to help plaintiff in the absence of a student assistant thus is not evidence Lucius harassed her on account of her disability. Lucius could have been kind and assisted her, but his animosity towards her, without more evidence showing he mistreated her on account of her disability, does not constitute disability harassment. (See *Morris v. Oldham County*

26

*Fiscal Court* (6th Cir. 2000) 201 F.3d 784, 790-791 [supervisor's belligerence following plaintiff's complaints to employer was not actionable sexual harassment].)

#5. *"What's with the cane?"* The evidence does not demonstrate this comment by Lucius was disability harassment. Plaintiff's doctor had suggested she use a cane when her back was particularly painful. As she walked into the DSPS office with her cane, Lucius said, "What's with the cane?" Plaintiff did not believe she had used a cane in front of Lucius before this event. However, she asserted his tone of voice and demeanor when he said the comment made her believe he was not just wondering why she had one, but was harassing her because of her disability. The comment made her feel so humiliated that she never used a cane at work again.

Plaintiff's interpretation of this event amounts to speculation. If an employee suddenly appears at work using a cane or crutches, it is within the supervisor's function to learn what has happened to his employee. He needs to know whether the employee is able to continue performing her job or needs accommodations. An employer must be able to inquire about an injury or disability without facing liability for doing so.

#7. *Reported for diagnosing a student*. The facts surrounding this incident do not indicate plaintiff was harassed due to her disability. Plaintiff testified that an instructor contacted her and asked if a student could meet with a counselor immediately. The student was hearing voices. At plaintiff's request, the instructor brought the student into the office. Lucius was out, so plaintiff attempted to arrange for the student to speak with another counselor. The student said she did not want to talk with anyone. She knew she was "bipolar" and would go to an emergency room if she needed. Plaintiff scheduled an appointment for the student.

Plaintiff testified that in her report of the visit, she wrote what the student had told her. However, she wrote simply: "Instructor brought in student, dash, student hearing voices, dash, is bipolar, dash, no meds or insurance." Plaintiff admitted this sentence did not inform the reader it was what the student had said, and that, as written, it implied she

had made a diagnosis. Plaintiff stated she explained the entire situation to Lucius, but he apparently did not explain it to Dean Allbee, because Dean Allbee threatened to discipline her for diagnosing a student. The District's director of human resources intervened, and the proposed discipline was withdrawn.

Plaintiff gave no direct evidence that this event was based on her disability. She described the incident as an attempt by Lucius to blame her for things for which she was not responsible and to undermine her competency and credibility, but she provided no evidence that Lucius reported her to Dean Allbee because of her disability.

#8. *New job description.* The evidence surrounding the change in plaintiff's job description indicates the change did not occur on account of plaintiff's disability. Plaintiff admitted the job description was changed as part of a classification study that affected all classified employees in the District. In fact, the study, released on December 11, 2007, at a cost of $641,000 pursuant to an agreement with plaintiff's union, resulted in 232 employees having their job descriptions revised.

Contrary to plaintiff's allegations, the new description did not state the employee must be able to perform the main physical duties of the job. Rather, it stated "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential job functions." Plaintiff in fact provided input in the revised job description. She never objected to the revised description during the classification study. She also admitted the new description did not require her to perform any additional duties she was not already performing.

There is no evidence the revised job description resulted from harassment based on plaintiff's disability.

#10. *Lucius refused to acknowledge an e-mail from plaintiff asking for clarification.* The facts do not demonstrate this incident arose due to plaintiff's disability. Plaintiff testified that in early 2008 she sent Lucius an e-mail seeking clarification. When he did not respond, she entered his office and asked if he was going to respond. Lucius

28

replied, "What e-mail?" Plaintiff saw her e-mail on his computer monitor, and she told him it was that e-mail. Lucius said, "I don't see an e-mail." Plaintiff asked if he was telling her he was not going to respond. He said, "You don't need a response." She said, "I'm trying to get clarification." Lucius said, "I gave you enough clarification. You don't need anymore [*sic*] clarification."

This incident is another example of supervisorial authority. A supervisor is able to determine the appropriate level of communication with subordinate employees. There is no indication Lucius refused to provide additional clarification to plaintiff on account of her disability. His behavior could have been seen as hostile, but nothing shows it was hostile based on her disability.

#13. *Lack of disabled placard.* This incident occurred because plaintiff did not display her disabled parking placard in her windshield, not because she was disabled. Plaintiff claimed Dean Allbee told a District security officer in March or April 2008 to tell plaintiff to always have her disabled parking placard displayed in her windshield in order to park anywhere on campus. Plaintiff testified the placard had been sitting on her seat. The officer, Jaque Palmer, declared Dean Allbee contacted him one day in spring of 2008 and asked if plaintiff's car had a disabled placard displayed. Palmer told Dean Allbee he had not checked that day but he knew plaintiff had a placard. When he checked plaintiff's car, the placard was not displayed. He contacted plaintiff and asked where the placard was. Plaintiff stated she had been out to dinner the night before with her husband and they had used his vehicle. Palmer reported this to Dean Allbee and that he had warned her. Later that same day, he saw plaintiff's husband's car parked by the DSPS office, and then later, he saw the disabled placard was displayed in plaintiff's vehicle.

Nothing in this incident indicates Dean Allbee took this action based on plaintiff's disability. According to plaintiff, Palmer stated that Dean Allbee had never asked him to

check on any other disabled persons' cars parked on campus.  Thus, Dean Allbee might have singled plaintiff out for a reason other than her disability.

#16.  *Termination from DSPS office job*.  The facts surrounding this incident indicate it did not occur due to plaintiff's disability.  Plaintiff claims she learned from a District online job description that she had been "terminated" from her position in the DSPS office effective February 28, 2009.  What actually happened was plaintiff accessed the District's payroll data on the District's intranet portal.  Effective January 2009, the District began using a new payroll software program that required the employee's current job assignment be listed as active so that the proper budget was charged for the employee's pay.  In order to properly charge the budget that paid plaintiff's salary in her new position, that position was listed as "active," and her position with the DSPS office was listed as "terminated."  These designations were for purposes of the payroll software only, and did not reflect any action taken by the District against any employee.

In fact, by law and District policy, the District can permanently change an employee's employment status only by an official act of the District's board of trustees.  (Ed. Code, § 70902, subd. (b)(4); Sierra College Board Policy No. 7110.)  The District's board has not taken any action on plaintiff's employment status.  Upon learning from plaintiff that she believed she had been terminated, the District informed her by letter that it had not terminated her from the DSPS office position nor had it made her current position permanent.  To resolve plaintiff's concern, the District offered her a choice to transfer back to her former position in the DSPS office or to stay in her current position.  By e-mail, plaintiff stated she found neither choice acceptable.

No evidence in the record indicates the operation of the new payroll software and its designation of plaintiff as terminated from her former position occurred on account of her disability.

Because plaintiff failed to introduce substantial evidence showing any of the incidents that occurred within the limitations period constituted harassment based on

30

disability, the continuing violation doctrine does not apply, and our analysis of her harassment claim ends. The trial court did not err in granting summary to the District and Lucius on plaintiff's fourth cause of action for disability harassment under FEHA.

III

*Summary Judgment on Failure to Prevent Harassment Cause of Action*

Plaintiff admits that absent a claim for harassment, a party cannot state a claim for failure to prevent that harassment. (See *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021.) Having concluded plaintiff did not state a claim for disability harassment, we also affirm the trial court's grant of summary judgment against plaintiff's cause of action for failure to prevent harassment.

IV

*Summary Judgment on Invasion of Privacy Claim*

In her seventh cause of action, plaintiff alleged the District violated her state constitutional right to privacy when Dean Allbee confiscated and examined her medications found in the file cabinet, and when he made a list of her medications and required plaintiff to sign it upon returning the medications to her. The trial court granted summary judgment against this cause of action in part because plaintiff failed to file a damages claim with the District within the time required under the Government Claims Act. Plaintiff contends the trial court is incorrect. We disagree.

A claim for damages against a government entity must be filed within six months of an action's accrual. (Gov. Code, § 911.2, subd. (a).) Plaintiff filed her initial claim on February 18, 2009. Thus, for her claim to have been timely, her privacy cause of action had to have accrued no earlier than August 18, 2008. If her cause of action accrued before August 18, her damages claim was untimely and her cause of action was barred.

Plaintiff contends her cause of action did not accrue until all the facts establishing the elements of her cause of action had been, or should have been, discovered. She asserts that did not happen until August 18, 2008, when Dean Allbee returned her

31

medications to her and told her he had researched the medications on the Internet. Plaintiff's reading of the discovery rule is too generous.

"[T]he common law rule, that an action accrues on the date of injury [citation], applies only as modified by the 'discovery rule.' The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause. [Citation.] A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her. [Citation.]" (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 (*Jolly*), fn. omitted.)

"Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .' " ' [Citation.] [Original italics.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly, supra*, 44 Cal.3d at pp. 1110-1111, fn. omitted.)

The evidence indicates plaintiff had a suspicion of the District's alleged wrongdoing no later than August 8, 2008, 10 days outside of the limitations period. According to e-mails plaintiff sent to her attorney on August 8, 2008, and August 26, 2008, plaintiff learned on August 6, 2008, that some of her belongings had been thrown away. She went to the DSPS office that afternoon and saw some of her items in the garbage. She asked DSPS staff about other items of hers that were missing, and was told they had been placed in a box and given to the administration pursuant to Dean Hallberg's instruction. She went to the Dean's office and informed the administrative

assistant of the incident, identified the contents that had been placed in the box, and requested their immediate return. She was told she would not be able to retrieve any items in the box until after Dean Allbee returned from vacation on August 11.

On the following day, August 7, she received back the box and its contents "except for my personal medicines that were in the box." Later that day, she received a call from the dean in charge and was told to stay away from the DSPS office and to stop bothering people about these matters. She complained about these incidents to her attorney in an e-mail the next day, August 8, 2008.

These incidents would put a reasonable person on notice that someone had done something wrong to her. Her medications were confiscated on August 6, and then they were not returned to her on August 7 when everything else was returned to her. Moreover, she was told to stay away from the office that held her medications. This created an actual suspicion in plaintiff that something wrong had happened, as she complained about it to her attorney on August 8. That suspicion triggered the running of the six-month limitations period, which ended on February 8, 2009. She filed her damages claim with the district 10 days after the limitations period expired, and she did not seek leave to file a late claim. Because her claim was untimely, the trial court correctly granted summary judgment against plaintiff on her invasion of privacy cause of action.

V

*Objections to Evidence*

Plaintiff contends the trial court erred in sustaining numerous objections made by the District against various statements in her declaration. We have reviewed the objections and conclude that, in light of our rulings in this case, even if the trial court did err, the errors were not prejudicial. None of them affected plaintiff's ability to overcome the difficulties she has encountered here.

33

## VI

*Attorney Fees*

After granting the District summary judgment, the trial court awarded the District $206,368.50 in attorney fees pursuant to Government Code section 12965, subdivision (b), a section of FEHA that provides attorney fees for frivolous actions. The court determined plaintiff's continued prosecution of her FEHA claims, despite numerous rulings that they were not supported by the facts, was frivolous, unreasonable, and groundless.

The court specified a number of reasons supporting its ruling. Regarding plaintiff's disability discrimination and retaliation claims, the court stated plaintiff knew she had not suffered an adverse employment action, a required element for recovering on those claims. Regarding the disability harassment claim, plaintiff's continued reliance on dozens of alleged incidents over more than four years was unreasonable given the court's ruling that the continuing violation doctrine did not apply, that only seven of those incidents were arguably related to her disability, and only five of those were directed towards plaintiff. It was objectively unreasonable for plaintiff to have believed those isolated incidents could support a claim for disability harassment.[3]

The court also faulted plaintiff for relying on inapplicable case law to argue she had a timely cause of action for failure to accommodate, a cause of action she did not plead, and for arguing at one point that her commencing the internal grievance with the District satisfied the claim filing requirement of the Government Claims Act.

Plaintiff contends the trial court abused its discretion in awarding attorney fees because her claims were not frivolous. She asserts her acceptance of the temporary

---

[3] Apparently, plaintiff argued in her points and authorities opposing summary judgment that she had been subject to 66 different acts of disability harassment. That points and authorities, however, is not included in the joint appendix.

transfer to escape harassment and retaliation was an actionable adverse employment action, that the June 30, 2007, denial of her hiring a student assistant was the accrual of a new cause of action for failing to accommodate, that the trial court applied too narrow an interpretation of the continuing violation doctrine, and that it was not unreasonable for her to pursue her claims for disability harassment and failure to prevent harassment. She also claims the court erred by not making findings on her ability to pay attorney fees, and by relying on the Government Claims Act issue as a basis for awarding fees under FEHA.

We review the trial court's award for an abuse of discretion (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 (*Cummings*)), and we conclude the trial court did not abuse its discretion awarding attorney fees in this instance.

A prevailing defendant is entitled to attorney fees under FEHA if plaintiff's claim is frivolous, unreasonable or groundless. (*Cummings, supra,* 11 Cal.App.4th at p. 1388; *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421 [54 L.Ed.2d 648, 656].) The court may award a victorious FEHA defendant attorney fees where the plaintiff's conduct was egregious or his or her case was patently baseless for objective reasons. (*Cummings, supra*, 11 Cal.App.4th at p. 1389.)

We cannot conclude the trial court abused its discretion in finding plaintiff's conduct egregious or her case patently baseless. Plaintiff had no substantial evidence linking the alleged acts of harassment to her disability. Her invasion of privacy action was time-barred. Her other causes of action required a showing of an adverse employment action taken by the District, and the only action she can allege within the applicable statute of limitations is her decision to transfer to another department, a decision she made voluntarily without any coercion by the District.

Plaintiff contends her voluntary transfer became an adverse employment action when the District concluded its internal investigation and found against her allegations, and when it exhibited hostility towards her returning to the DSPS office by throwing away her personal belongings and confiscating her medications. But the undisputed

evidence is that *plaintiff* chose to leave the DSPS office, was never terminated from that position, and when she was given the opportunity to return to the DSPS office, she declined the offer.  There was no evidence of an adverse employment action against her.  Yet she pursued her complaint anyway.  Under these circumstances, the trial court did not abuse its discretion by determining it was groundless for her to do so.

Plaintiff faults the trial court for not determining her ability to pay the fees awarded against her.  It is true that "a plaintiff's ability to pay must be considered before awarding attorney fees in favor of the defendant."  (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1203.)  However, while a trial court has an obligation to consider a losing party's financial status before assessing attorney fees under FEHA, the losing party has the burden of producing evidence of her inability to pay.  (*Id*. at pp. 1203-1204.)  A trial court does not abuse its discretion when it awards fees against a losing party that failed to offer any evidence of her inability to pay.  (*Ibid*.)

That is what happened here.  At the hearing on the attorney fees motion, counsel for the District asked the court to make a finding on the record that plaintiff submitted no evidence regarding her inability to pay attorney fees.  The court asked plaintiff's counsel if he wanted to address whether any evidence had been presented on that issue.  Counsel stated:  "There was not and I think the record stands for itself."

Counsel chose to stand on the record and not submit any evidence of plaintiff's ability to pay.  The trial court thus did not abuse its discretion awarding attorney fees against plaintiff without determining her ability to pay when she determined not to offer any evidence on the issue even though she was given the opportunity to do so.  In addition, given the amount of evidence in support of the award, the trial court's purported reliance on plaintiff's failure to timely file a damages claim with the District was harmless.

# VII

## *Motion to Quash*

Pursuant to the District's motion, the trial court quashed a deposition subpoena plaintiff had served on the Board of Behavioral Sciences seeking all documents concerning the revocation of Lucius's counseling license in 1998. The court determined the information sought was not relevant to any of the allegations in plaintiff's complaint, nor was it likely to lead to the discovery of any relevant information. Plaintiff had argued the evidence was relevant because Lucius's alleged harassment may have been motivated by his engaging in the unauthorized practice of psychology, but the court found "no such allegations are made in the complaint." The court also imposed sanctions against plaintiff in the amount of $2,000, but ruled its order had no effect on plaintiff's ability to obtain the documents through a request under the California Public Records Act. (Gov. Code, § 6250 et seq.)

Plaintiff contends the trial court abused its discretion. She claims the information could reasonably have led to evidence bearing on Lucius's credibility, his intent for harassing plaintiff, and the veracity of plaintiff's allegations of wrongdoing in the DSPS office. She faults the court for not conducting an in camera review to determine whether the documents were discoverable.

The court did not abuse its discretion. Nowhere in this action did plaintiff allege Lucius was harassing her because he was covering up his illegally practicing as a psychologist. The evidence thus would not have led to the discovery of any evidence relevant to plaintiff's causes of action.

Plaintiff argues the evidence was relevant to attack Lucius's credibility. However, evidence of past actions relevant only as tending to prove a character trait is inadmissible in civil actions to attack credibility. (Evid. Code, § 787.)

Meanwhile, plaintiff suffered no prejudice. She obtained the documents through a Public Records Act request. They show that in 1998, nearly 10 years before plaintiff

37

filed her original complaint in this matter, Lucius entered into a stipulation and settlement with the Board of Behavioral Sciences under which his license as a marriage, family, and child counselor was revoked, with revocation immediately stayed, and Lucius was placed on probation for four years. Lucius had falsely advertised himself as a psychologist in various telephone books from 1991 through 1997; had failed to include his license number and type in various correspondence, reports, and advertisements; and he had held himself out as able to perform services that were beyond the scope of his license.

Plaintiff submitted the documents as an exhibit in support of her opposition to the District's motion for summary judgment. The District did not object to the documents. The trial court had discretion to examine the documents, but nevertheless found the evidence did not introduce or dispute any material fact.

## DISPOSITION

The judgment and the order awarding attorney fees are affirmed. Costs on appeal are awarded to the District. (Cal. Rules of Court, rule 8.278(a).)


NICHOLSON , Acting P. J.


We concur:


ROBIE , J.


MAURO , J.